```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
ARBITRON INC.,                           :
                    Plaintiff,           :
                                         :          08 Civ. 8497
           -v-                           :             (DLC)
                                         :
ANDREW M. CUOMO, in his Official         :       OPINION AND ORDER
Capacity as Attorney General for the     :
State of New York,                       :
                    Defendant.           :
                                         :
---------------------------------------- X
```

Appearances:

For Plaintiff:

Alfred R. Fabricant
Lawrence C. Drucker
Joseph Fields
Peter Lambrianakos
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036

For Defendant:

Alphonso B. David
Spencer Freedman
Andrew J. Elmore
Office of the Attorney General of the State of New York
120 Broadway
New York, NY 10271


DENISE COTE, District Judge:

In September 2008, the Attorney General of the State of New York ("Attorney General") began to investigate whether plaintiff Arbitron, Inc. ("Arbitron"), the leading publisher of radio

audience estimates, was engaging in deceptive business practices in connection with its release of a new method for compiling radio ratings in New York. After the Attorney General announced its intention to sue Arbitron in state court, Arbitron swiftly filed this lawsuit, seeking a temporary restraining order ("TRO") and a preliminary injunction against the Attorney General. This Opinion grants the motion of the Attorney General to dismiss this federal action under the Younger abstention doctrine in favor of the Attorney General's subsequently filed state court action.

BACKGROUND

The following facts are undisputed. Arbitron is a Delaware corporation that publishes radio audience estimates and station ratings in various markets throughout the United States. Its subscribers are principally radio broadcasters, advertisers, and advertising agencies who use the data to make programming decisions and set advertising rates. For many years, Arbitron collected its survey data from participants who used paper diaries to record the radio broadcasts to which they listened. In 2007, Arbitron introduced the Personal People Meter ("PPM"), a device which electronically records survey participants' listening habits, to replace paper diaries in Houston and Philadelphia. Arbitron began to publish PPM estimates for New

2

York in November 2007, discontinued diary-based ratings in New York following the Spring of 2008, and scheduled October 8, 2008 as the date on which Arbiton's PPM audience estimates would become "currency" used to set advertising prices in New York.

On September 9, 2008, the Attorney General advised Arbitron that it was commencing an investigation into Arbitron's deployment of the PPM technology.  In its letter, the Attorney General expressed concern that racial minorities were under-represented among PPM survey participants which, given Arbitron's "virtual monopoly over ratings in the radio industry," could cause radio stations directed at minorities to experience a decline in advertising revenues.  The subpoena accompanying the letter identified New York's false advertising, deceptive trade practices, and commercial fraud statutes, N.Y. Gen. Bus. L. §§ 349, 350 and N.Y. Exec. L. § 63(12), as the basis for the investigation.

Following its review of Arbitron documents produced pursuant to the September 9 and subsequent subpoenas, the Attorney General notified Arbitron in a letter of October 2 of its intent to bring suit against the company under the above-identified New York state statutes as well as under N.Y. Gen. Bus. L. § 352 and N.Y. Civ. Rts. L. § 40-c.  The letter allowed Arbitron five days to "show . . . why such proceeding should not be instituted."  In response, Arbitron published the September

3

2008 PPM estimates and "commercialized" July and August 2008 PPM ratings for the New York market on October 6, two days ahead of schedule.  On the same date, Arbitron filed this action pursuant to 42 U.S.C. § 1983, and applied for a TRO to enjoin the Attorney General from "taking any steps or actions seeking to restrain or prohibit Arbitron from publishing commercially its PPM audience estimates."  In its complaint, Arbitron asserts that "[a]ny restraint on Arbitron's publication of its PPM audience estimates, including prohibiting Arbitron from publishing in the New York market on November 5, 2008 or thereafter, would constitute an unlawful prior restraint of Arbitron's right to publish" in violation of the First Amendment to the Constitution.  Arbitron seeks a declaration that its PPM audience estimates are non-commercial speech, and as such, may not be the subject of a prior restraint, and preliminary and permanent injunctions against the Attorney General from taking "any action or steps" to enjoin Arbitron from publishing its New York PPM audience estimates.

This Court held a hearing with both parties that same day. At the hearing, the Attorney General agreed that he would not seek a TRO or any ex parte relief against Arbitron in state court, and that Arbitron would have an opportunity to be heard in state court before any relief requested by the Attorney General were granted.  Given the Attorney General's

representations, the Court declined to issue a TRO and set a briefing schedule for Arbitron's motion for a preliminary injunction and the motion to dismiss which the Attorney General indicated he wished to file.

Four days later, on October 10, the Attorney General filed a lawsuit in New York state court to enjoin Arbitron from engaging in fraudulent and deceptive business practices related to the PPM and from continuing to commercialize the "flawed and unaccredited PPM methodology."  Naming causes of action under New York's Executive Law, General Business Law and the Civil Rights Law, the Attorney General also sought restitution, penalties, and fees in addition to a permanent injunction.

On October 16, the Attorney General moved to dismiss Arbitron's federal complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, contending that 1) abstention in favor of the state proceeding is mandatory, 2) the Court lacks subject-matter jurisdiction because Arbitron's federal claim is actually a federal defense to the state investigation, and 3) even if jurisdiction is proper, Arbitron fails to state a claim because there is neither any prior restraint nor a valid First Amendment defense against the state investigation.  The motion to dismiss was fully submitted on October 24.  There is a hearing scheduled for

5

October 30 to consider Arbitron's motion for a preliminary injunction.

DISCUSSION

The Attorney General contends that Arbitron's complaint must be dismissed under Rule 12(b)(1), Fed. R. Civ. P., because abstention is mandatory, citing Younger v. Harris, 401 U.S. 37 (1971). He identifies the investigatory subpoenas, the first of which is dated September 9, the five-day notice given on October 2 of an intent to sue, and the state court proceedings commenced on October 10 as pending state court proceedings requiring abstention.

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d 635, 638 (2d Cir. 2005). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Id. (citation omitted). A court must "accept as true all material factual allegations in the complaint," Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), but refrain from "drawing from the pleadings

inferences favorable to the party asserting [jurisdiction]," APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (citation omitted).

Generally, district courts have a "virtually unflagging obligation to exercise the jurisdiction given them." Royal and Sun Alliance Ins. Co. of Canada v. Century, 466 F.3d 88, 92 (2d Cir. 2006) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). Younger and its progeny delineate an exception to this rule, requiring federal courts to abstain where appropriate to "allow state courts to resolve pending matters within their jurisdiction." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004).

In Younger, the Supreme Court explained that a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States," 401 U.S. at 44. Under Younger, abstention is mandatory when "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 100-01 (2d Cir. 2004) (citation omitted). While "Younger was a challenge to an ongoing state criminal case . . .

7

the doctrine has been extended with equal force to federal civil litigation challenging certain other state proceedings." Kaufman v. Kaye, 466 F.3d 83, 86 (2d Cir. 2006). Those proceedings include state civil enforcement proceedings, see Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975), and state administrative proceedings, Washington, 373 F.3d at 318. Where the Younger requirements are met, the appropriate remedy is to dismiss the federal case. Gibson v. Berryhill, 411 U.S. 564, 577 (1973).

Plaintiff disputes the application of Younger abstention on two grounds. It argues that there was no pending state proceeding at the time it brought suit in federal court. Second, it denies that the Attorney General's investigation "implicates an important state interest."

The third requirement of Younger -- an adequate opportunity for review of federal constitutional claims in the state proceedings -- is not contested by Arbitron. It is undisputed that Arbitron may raise its First Amendment defense to the Attorney General's claims in the state court proceeding. "[I]n conducting the Younger inquiry, considerations of comity preclude any presumption that the state courts will not safeguard federal constitutional rights." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 77 (2d Cir. 2003)

(quoting Middlesex Country Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982)).

1. Ongoing State Proceeding

Arbitron first argues that the Court need not abstain in favor of the pending state court action, because it was not filed until October 10, four days after Arbitron moved in federal court for a TRO and preliminary injunction. The Supreme Court held in Hicks v. Miranda, 422 U.S. 332 (1975), that Younger abstention applies "where state . . . proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in federal court." Hicks, 422 U.S. at 349. At the point where the plaintiffs in Hicks were added as defendants in the state court action, the federal court had denied their application for a TRO and had designated a three-judge court to consider the federal court plaintiffs' constitutional claim. Id. at 338. The Court held that the district court erred in these circumstances in not dismissing the federal complaint. Id. at 350. In contrast, the issuance of a preliminary injunction constitutes proceedings of substance on the merits and bars abstention under the Younger doctrine. Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 238 (1984) (declining to decide whether the issuance of a TRO by a federal court

qualifies as proceedings of substance on the merits). See Cuomo v. Dreamland Amusements, No. 08 Civ. 7100 (JGK), 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008) (pending motion by federal plaintiff for injunctive relief did not bar abstention).

There were no proceedings of substance on the merits in this federal lawsuit prior to the filing of the Attorney General's state-court action against Arbitron. As in Hicks, all that has happened is the denial of a TRO and the scheduling of a preliminary injunction hearing. Thus, as of this time, there is a pending state court action which may properly trigger Younger abstention.[1]

Arbitron attempts to distinguish Hicks by noting the limited progress to date in the state court proceedings. The test articulated in Hicks, however, looks to the progress made in the federal lawsuit, and does not require that the pending state proceeding be advanced to any particular stage. See, e.g., Franza v. Abrams, 695 F.Supp. 747, 750 (S.D.N.Y. 1988) (citing Hicks and abstaining where "there have been virtually no proceedings in state court").

---

[1] Given the filing of the state court lawsuit prior to any proceedings of substance on the merits in federal court, it is unnecessary to reach the Attorney General's additional argument that its issuance of investigatory subpoenas and threat to sue also constituted a pending state proceeding and justify abstention.

2. State Interest

Arbitron argues that the Attorney General is simply substituting itself for private parties -- the minority radio stations -- and bringing an essentially private dispute that does not concern the "central sovereign functions" of state government. The Attorney General contends that the state court proceeding implicates important interests in enforcing New York state anti-fraud and civil rights laws.

In the context of Younger abstention, a state interest is "important" where "the state action concerns the central sovereign functions of state government." Grieve v. Tamerin, 269 F.3d 149, 152 (2d Cir. 2001) (citation omitted). In such circumstances, "exercise of the federal judicial power would disregard the comity between the States and the National Government." Id. (citation omitted). In the context of a state court action filed by the Attorney General for the state of Connecticut, the Second Circuit advised that, in assessing what state interests are at stake, courts

> do not look narrowly to the State's interest in the outcome of the particular case, but rather look to the importance of the generic proceedings to the State. The burden is on the state to establish that an important state interest is implicated. In order to ascertain the "generic proceeding" involved in the action brought by the state, we cannot focus solely or chiefly upon the style of the state's pleading, such as the particular causes of action pleaded or statutes invoked. We must consider the

11

> underlying nature of the state proceeding on
> which the federal lawsuit would impinge.

Philip Morris, Inc. v. Blumenthal, 123 F.3d 103, 106 (2d Cir. 1997) (citation omitted).

Where the state itself has filed the pending state court litigation, Younger abstention has been rejected where the state's lawsuit sought monetary relief that "would be available to a private citizen" and thus was based on a claim "more accurately classified as a subrogation action." Id. In contrast, abstention was mandatory where a state sued to recover fraudulently obtained welfare benefits, an action which vindicated its role in administering public-assistance benefits. Trainor v. Hernandez, 431 U.S. 434, 444 (1977). Similarly, state disciplinary proceedings to revoke a medical license vindicate sufficiently important state interests. Doe v. State of Conn., Dept. of Health Services, 75 F.3d 81, 85 (2d Cir. 1996). Ongoing state proceedings to assure the safe, sanitary and non-discriminatory working conditions of state residents implicate the important interest a state has "in enforcing its own laws and investigating their violation." Dreamland, 2008 WL 4369270, at *10. As a final example, abstention was appropriate where the state sought to ensure that a business advertised its health services in accordance with state law, including the New

12

York consumer protection statute. Carr v. Axelrod, 798 F.Supp. 168, 175 (S.D.N.Y. 1992).

The Attorney General has shown that important state interests are implicated by its state court lawsuit against Arbitron. Its lawsuit seeks to enforce the state laws against discrimination and deceptive practices. The enforcement of these laws has the potential to affect the health of the radio stations serving the minority communities in this state and may prevent data, which the Attorney General contends is unreliable and misleading, from improperly influencing critical decisions affecting businesses operating within the state. These interests implicate sufficiently central sovereign functions of state government.

Arbitron relies principally on the Second Circuit's decision in Philip Morris, 123 F.3d 103, to argue that the state interests in pursuing its state court action are not sufficiently strong to warrant abstention. Plaintiff points to the similarities between Philip Morris and the instant case: both involve claims of deceptive business practices brought by a state attorney general. In Philip Morris, the state of Connecticut sought reimbursement from tobacco companies for expenditures made by its Medicaid program to treat tobacco-related illnesses. Id. at 106. Here, however, the Attorney General seeks to ensure that minority businesses operate free

13

from discrimination.  The elimination of discrimination is
indisputably an important state interest when undertaking the
analysis necessary for Younger's second prong.  See Ohio Civil
Rights Com'n et al. v. Dayton Christian Schools, Inc., 477 U.S.
619, 628 (1986) (sex discrimination); University Club v. City of
New York, 842 F.2d 37, 40 (2d Cir. 1988) (same).  Moreover,
Connecticut's suit in Philip Morris was "essentially a suit for
money damages," and not a matter of enforcing state statutes.
Philip Morris, Inc., 123 F.3d at 106.  In contrast, the Attorney
General's state court action here seeks to change business
practices and enforce state laws against discrimination and
deceptive practices.

While Arbitron is correct that private parties may also be
able to sue under at least some of the statutes at issue here,
that does not end the inquiry.  The Attorney General has an
independent obligation to enforce those statutes.  The fact that
a private party may also bring a lawsuit under a statute does
not mean that the "underlying nature," see Philip Morris, 123
F.3d at 106, of the lawsuit filed by a state's attorney general
does not implicate important state interests.  In any event, the
Attorney General's lead claim in its state court complaint is
brought under Executive Law § 63(12), which gives the Attorney

14

General sole authority to sue to restrain repeated fraud in commercial activities.[2]

CONCLUSION

The October 16, 2008 motion by the Attorney General to dismiss this action on the ground of Younger abstention is granted.

SO ORDERED:

Dated: New York, New York
October 27, 2008

                                           _____
                                                    DENISE COTE
                                          United States District Judge

---

[2] N.Y. Exec. L. § 63(12) provides that "whenever any person shall engage in repeated fraudulent or illegal acts . . . in the carrying on, conducting, or transaction of business, the attorney general may apply . . . for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts" (emphasis added). See also People v. State of New York, by Abrams v. Holiday Inns, Inc., No. 83 Civ. 564S (WMS), 1992 WL 532169 at *1 (W.D.N.Y. Aug. 28, 1992). In addition, only the Attorney General may seek statutory civil penalties under N.Y. Gen. Bus. L. § 350-d, another claim pleaded in the Attorney General's state-court complaint.